IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JESUS CAMPOS,

        Plaintiff,

v.                                             Case No. 04-2482-DJW

SHASTA BEVERAGES, INC.,

        Defendant.

## MEMORANDUM AND ORDER

This is an employment case involving claims of race and national origin discrimination, as well as retaliation for engaging in conduct protected by Title VII. The matter currently is before the Court on Defendant's Motion for Partial Summary Judgment (doc. 34) with regard to Plaintiff's claim of retaliation. For the reasons stated below, Defendant's Motion will be denied.

**A.    FACTS**

The following facts are either uncontroverted or presented in a light most favorable to Plaintiff, the nonmoving party:

1. Plaintiff is an individual of Mexican descent and national origin.

2. Plaintiff was employed by Defendant from April 10, 1996 through October 6, 2003 in Defendant's Lenexa beverage plant.

3. At the time of his termination, Plaintiff held the position of shift lead person.

4. At all times relevant to Plaintiff's claims in this lawsuit,

    a. Plaintiff reported to Rick Reynolds, who was Defendant's Plant Manager;

    b. Joe Erny was a supervisor for Defendant at the Lenexa plant; and

    c. Larry Walters was a supervisor for Defendant at the Lenexa plant.

5. Defendant's employee handbook provides Guidelines for Employee Conduct, which state in relevant part that

> Anyone violating [the following] guidelines can undermine the continuity, efficiency and safety of [Defendant's] operations and will be subject to immediate termination:
>
> \*     \*     \*     \*     \*     \*     \*     \*
>
> - Abusing, destroying, damaging, defacing or stealing company property, tools, equipment or the property of others on company property.

6. Chris Jackson, Defendant's Plant Manager at the time, issued the following memorandum to all employees on August 6, 1996:

> Please allow this memo to remind each employee that removing property from the plant will be viewed as theft and will be treated accordingly under our disciplinary policies.
>
> It is required that an authorization slip be in an employees possession if removal of anything is occurring. Example: loaned tools, typewriters, empty boxes, buckets, etc. Please obtain written permission from your supervisor if you need to take anything out of the plant besides your personal belongings.
>
> It has always been ok to take a drink out with you when you go home after a days work and it still is, but only ONE for your own consumption. We provide employee sales if you wish to provide others with drinks. We also provide complimentary cases at holidays for your enjoyment.
>
> We are in the process of getting authorization slips made up, until then please get written approval from your supervisor. When slips are completed they will be kept on file for loaned items until the item is returned.

7. Rick Reynolds replaced Jackson as Defendant's plant manager in October 1999.

8. Reynolds never reissued, discussed, posted, or provided Jackson's 1996 memorandum to any existing or new employee.

9. Reynolds believed that Jackson's 1996 memorandum referred only to good saleable product and not to "line rejects."

10. Flaws in the bottling process that result in defects such as partially filled cans or incorrect flavor designations are referred to by Defendant as "line rejects."

11. Approximately 24,000 line rejects are produced each month at the Lenexa plant.

12. Line rejects are crushed at the end of the run or placed in the employee break room.

13. In March 2001, Reynolds issued the following memo regarding theft of product:

> This memo should not be necessary but it has come to my attention that some employees are <u>rumored</u> to be willfully destroying unopened cases of product in order to try the product. This is the same as theft and will be treated as such from this date forward. Products are available for consumption in the break room. There is no reason for anyone to open cases of product. If you are curious as to the taste of a product, purchase a case through our employee purchase program. If anyone is unclear about this memo kindly see me.

14. Reynolds believes his March 2001 memorandum applies only to saleable product and not to line rejects.

15. Employees are allowed to drink as much line reject soda pop as they want when they are at the plant.

16. Reynolds knows of no written policy explicitly prohibiting employees from taking as much line reject soda pop as they want when they leave company premises but believes such conduct generally would be covered by the Guidelines for Employee Conduct prohibiting stealing.

17. Plaintiff states that during his employment, he was not aware of any policy or practice prohibiting employees from taking any quantity of line rejects home.

18. Plaintiff further states that during his employment, he personally observed employees take twenty (20) to thirty (30) cans (and sometimes more) of line reject soda pop from company premises on a regular basis with the knowledge of Defendant's management, including Rick Reynolds.

19. Plaintiff further states that during employee meetings attended by members of Defendant's management, including Rick Reynolds, he observed employees filling coolers, boxes or flats with cases and/or cans of line reject soda pop to take home.

20. Camerina Santoyo, an employee of Defendant from April 1997 to October 2003, states that during her employment, she was not aware of any policy or practice prohibiting employees from taking any quantity of line rejects home.

21. Santoyo further states that during her employment, she and other employees took twenty (20) to thirty (30) cans (and sometimes more) of line reject soda pop from company premises on a regular basis with the knowledge of Defendant's management, including Rick Reynolds.

22. Santoyo further states that during employee meetings attended by members of Defendant's management, including Rick Reynolds, she observed employees filling coolers, boxes or flats with cases and/or cans of line reject soda pop to take home.

23. Sonja Cole, an employee of Defendant during the relevant time period, states that during her employment, she was not aware of any policy or practice prohibiting employees from taking any quantity of line rejects home.

24. Cole further states that, during her employment, she and other employees took multiple quantities of line reject soda pop from company premises on a regular basis.

25. Cole further states that during her employment, she personally observed first shift employees take home large quantities of line reject soda pop on numerous occasions with the knowledge of Defendant's management, including Rick Reynolds.

26. Quentin Morgan, an employee of Defendant from 1987 to 2001, states that during his employment, he was not aware of any policy or practice prohibiting employees from taking any quantity of line rejects home.

27. Morgan further states that during his fourteen (14) years of employment with Defendant, he observed employees take multiple quantities and/or cases of line reject soda pop from company premises on a regular basis with the knowledge of Defendant's management, including Rick Reynolds.

28. On August 15, 2003, Plaintiff complained to Rick Reynolds that Plaintiff "was tired of Joe and Larry discriminating against him because he was Mexican." Plaintiff further told Reynolds at this meeting that Plaintiff was keeping a logbook, that Joe did not like Mexicans, that Plaintiff had talked to his lawyer about suing Joe, and that Plaintiff could file a complaint about Joe with the State of Kansas. Reynolds requested to see the logbook and Plaintiff responded that he would show it to Reynolds.

29. On August 18, 2003, Plaintiff informed Reynolds that his lawyer and the State of Kansas advised him not to share the logbook with Reynolds.

30. Plaintiff was terminated on October 6, 2003 for assisting employee Camerina

Santoyo remove a case of line reject soda pop from the work space and place it in the trunk of her car.

31.	Camerina Santoyo was terminated from her employment with Defendant on October 6, 2003 for taking home a case of line reject soda pop from the plant.

32.	Sonja Cole was terminated from her employment with Defendant on October 6, 2003 for taking home a case of line reject soda pop from the plant.

**B.	SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[3] An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[5] In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the other

---

[1] Fed. R. Civ. P. 56(c).

[2] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[3] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[4] *Id.*

[5] *Id.* at 670-71.

6

party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[6]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[7] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[8] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[9]

The Court notes summary judgment is not a "disfavored procedural shortcut" but an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[10]

## C.   PLAINTIFF'S RETALIATION CLAIM

To make a prima facie case of retaliation under Title VII, plaintiff must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.[11] If Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a nondiscriminatory reason

---

[6]*Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[7]*Anderson*, 477 U.S. at 256.

[8]*Adler*, 144 F.3d at 671.

[9]*Id.*

[10]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[11]*O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1258 (10th Cir. 2001).

for the adverse employment action.[12] If Defendant satisfies this burden of production, then, in order to prevail, Plaintiff must prove that Defendant's articulated reason for the adverse action is pretextual, i.e. unworthy of belief.[13]

### 1. Prima Facie Case of Retaliation

#### a. Protected Activity

Defendant first contends there is no evidence that Plaintiff engaged in any protected activity. More specifically, Defendant argues Plaintiff's complaint to Reynolds on August 15, 2003 is not sufficient to qualify as protected opposition to discrimination because Plaintiff only complained about work schedule changes. The Court disagrees.

As a preliminary matter, the Court notes that it is not necessary for Plaintiff to succeed on or even assert the underlying claim in order to prove a case of retaliation. Plaintiff is deemed to have engaged in protected opposition to discrimination if he can establish he had a reasonable belief that Title VII was violated.[14] To that end, Plaintiff may demonstrate a prima facie case of racial discrimination under Title VII by showing that (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances which give rise to an inference of discrimination.[15] Plaintiff may demonstrate a prima facie case of

---

[12]*Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001).

[13]*Id.*

[14]*Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1171 (10th Cir. 2003) (explaining that an actual violation of Title VII is not required to maintain a retaliation actions under the statute, but clarifying that the plaintiff must have had a reasonable good faith belief that the underlying conduct was a violation of the statute), *cert. denied*, 540 U.S. 1180 (2004); *see also Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984) (collecting cases).

[15]*Hysten v. Burlington N. & Santa Fe R.R. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002).

for the adverse employment action.[12] If Defendant satisfies this burden of production, then, in order to prevail, Plaintiff must prove that Defendant's articulated reason for the adverse action is pretextual, i.e. unworthy of belief.[13]

### 1. Prima Facie Case of Retaliation

#### a. Protected Activity

Defendant first contends there is no evidence that Plaintiff engaged in any protected activity. More specifically, Defendant argues Plaintiff's complaint to Reynolds on August 15, 2003 is not sufficient to qualify as protected opposition to discrimination because Plaintiff only complained about work schedule changes. The Court disagrees.

As a preliminary matter, the Court notes that it is not necessary for Plaintiff to succeed on or even assert the underlying claim in order to prove a case of retaliation. Plaintiff is deemed to have engaged in protected opposition to discrimination if he can establish he had a reasonable belief that Title VII was violated.[14] To that end, Plaintiff may demonstrate a prima facie case of racial discrimination under Title VII by showing that (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances which give rise to an inference of discrimination.[15] Plaintiff may demonstrate a prima facie case of

---

[12]*Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001).

[13]*Id.*

[14]*Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1171 (10th Cir. 2003) (explaining that an actual violation of Title VII is not required to maintain a retaliation actions under the statute, but clarifying that the plaintiff must have had a reasonable good faith belief that the underlying conduct was a violation of the statute), *cert. denied*, 540 U.S. 1180 (2004); *see also Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984) (collecting cases).

[15]*Hysten v. Burlington N. & Santa Fe R.R. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002).

hostile work environment based on race under Title VII by showing that (1) he is a member of a protected class; (2) the conduct in question was unwelcome; (3) the harassment was based on race; (4) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (5) some basis exists for imputing liability to the employer.[16]

The Court finds Plaintiff has produced sufficient evidence that could allow a reasonable jury to conclude that he had a reasonable, good faith belief that he had been subjected to discrimination based on race and/or racial harassment due to a hostile work environment, as prohibited by Title VII. Defendant's Plant Manager Rick Reynolds indicated in his deposition that Plaintiff complained of discrimination on August 15, 2003, one and one-half months before Plaintiff's termination. Moreover, Reynolds memorialized Plaintiff's complaint in a dated memorandum, which states in pertinent part that, on August 15, 2003, Plaintiff complained to Rick Reynolds that he "was tired of Joe and Larry discriminating against him because he was Mexican." Plaintiff further told Reynolds at this meeting that Plaintiff was keeping a logbook, that Joe did not like Mexicans, that Plaintiff had talked to his lawyer about suing Joe, and that Plaintiff could file a complaint about Joe with the State of Kansas.

Although the general allegations of discrimination and harassment recorded by Reynolds in his August 15, 2003 memorandum, taken in isolation, may not suffice; when taken in context of other evidence submitted to the Court, including a copy of the Charge of Discrimination filed by Plaintiff with the Equal Employment Opportunity Commission and attached to Plaintiff's Complaint in this action, however, the Court concludes that a jury could find that Plaintiff had a reasonable, good faith belief that he was being subjected to actionable race discrimination and harassment under

---

[16]*Brandau v. State of Kansas*, 968 F.Supp. 1416, 1420 (D. Kan. 1997).

Title VII when he complained to Reynolds on August 15, 2003.

### b. Causal Connection

Defendant does not dispute that Plaintiff's termination qualifies as an adverse employment action for purposes of a retaliation claim; thus, the Court moves directly to the third prima facie element: whether there is sufficient evidence to demonstrate that a causal connection exists between the protected activity and the adverse employment action.

Defendant argues Plaintiff cannot show a causal connection between his complaint of discrimination and harassment based on race and national origin and his termination from employment. Specifically, Defendant argues that no causal connection exists because Plaintiff was terminated for violation of Defendant's policies regarding removal of company property from the work space. Defendant further argues that the five other employees who were observed removing company property from the work space also were terminated for violation of Defendant's same policies.

Defendant's argument here is better suited to its claim that the reasons for terminating Plaintiff's employment were legitimate and non-discriminatory; as such, that argument will be discussed in detail with regard to pretext, *infra*. Focusing solely on the causal connection prong of a retaliation claim, however, the evidence demonstrates that Plaintiff was terminated from employment by Reynolds on October 6, 2003, one and one-half month after lodging a complaint to Reynolds regarding racial discrimination and harassment. The United States Court of Appeals for the Tenth Circuit has held that if the adverse employment action has occurred within a short time

after the protected activity, causation may be inferred from this evidence alone.[17] Thus, for purposes of Plaintiff's prima facie case, the Court finds that the temporal proximity set forth here is sufficient to establish a genuine issue of material fact regarding causation.

### 2. Legitimate, Non-Discriminatory Reason/Pretext

Defendant contends that it terminated Plaintiff for violation of Defendant's policies regarding removal of company property from the work space. Defendant further argues that the five other employees who were observed removing company property from the work space also were terminated for violation of Defendant's same policies. Because Defendant articulates a facially neutral reason for its action, the burden shifts to Plaintiff to establish pretext.

To establish pretext, Plaintiff must show that "a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence."[18] A particular plaintiff can accomplish this by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence."[19] However, mere conjecture that the employer's explanation is a pretext for retaliation is an insufficient basis for denial of summary judgment.[20]

---

[17]*See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (discussing case law establishing that one and one-half months between the protected activity and the adverse employment action may, by itself, establish causation, but three months is too long).

[18]*Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 256 (1981).

[19]*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotation and citation omitted).

[20]*Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

Plaintiff asserts that Defendant's articulated reason is unworthy of credence due to inconsistencies and contradictions. Specifically, Plaintiff asserts that (1) he complained of discrimination and a hostile work environment in August of 2003 to the Plant Manager, Rick Reynolds; (2) his complaint of discrimination and hostile work environment was not investigated; (3) Defendant's management had previously allowed employees to take multiple quantities of line reject product at will and without repercussion; (4) that Plaintiff previously had authority to dispose of line reject product and other product as he deemed appropriate; (5) that prior to the termination of Plaintiff and other employees on October 6, 2003, no policy existed regarding the amount of waste/reject product an employee could take from the plant for personal consumption; and (6) Defendant's sudden implementation of a policy regarding the taking of line reject product was pretextual in nature and that Plaintiff was actually terminated in retaliation for asserting his rights to be free from discrimination and a hostile work environment.

The Court finds Plaintiff's argument persuasive. Plaintiff has provided affidavits from former employees and a former supervisor which call into question the Defendant's contention, supported only by the affidavit and testimony of the Plant Manager, that an unwritten informal policy existed limiting an employee's ability to take line reject product. The witness affidavits of Camerina Santoyo, Sonja Cole, and Quentin Morgan, coupled with the testimony and affidavit of the Plaintiff, Jesus Campos, casts doubt on the veracity of Defendant's statement that Defendant fired Plaintiff for this reason. This evidence, along with the temporal proximity of Reynolds' decision to fire Plaintiff one and one-half months after he complained to Reynolds of race

discrimination and harassment in the workplace,[21] is sufficient to raise an issue of material fact as to whether Defendant's stated reason for Plaintiff's termination is pretextual.

### D. PLAINTIFF'S CLAIM FOR ECONOMIC DAMAGES

The economic damages sought by the Plaintiff flow naturally as a result of his claim for retaliatory termination from employment for engaging in a protected activity. Because Plaintiff's retaliatory termination claim has survived summary judgment, *see supra*, so should his claim for damages related to the allegedly retaliatory termination: reinstatement, front pay, lost wages, lost bonuses, lost medical insurance, lost life insurance, lost accidental death insurance, lost pension, lost retirement, and lost Social Security contributions.

Accordingly, it is hereby ordered that Defendant's Motion for Partial Summary Judgment (doc. 34) is denied.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 8th day of February, 2006.

                                                                    s/ David J. Waxse
                                                                    David J. Waxse
                                                                    United States Magistrate Judge

cc:    All counsel and *pro se* parties

---

[21] *See Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000) (holding close temporal proximity between the employee's protected activity and the adverse employment action is a factor to consider in determining whether the employer's proffered reason is a pretext for retaliation) (citing *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 551 (10th Cir. 1999) and *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 752 (10th Cir. 1999)).